**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kifa Elia,<br><br>            Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>           Defendant. | No. CV-15-01461-PHX-DLR<br><br>**ORDER** |

Plaintiff is a minor with rheumatoid arthritis. (AR 14, 17.) In February 2013, Plaintiff's mother, Kifa Elia, filed an application for Supplemental Security Income (SSI) benefits on Plaintiff's behalf, alleging that Plaintiff's rheumatoid arthritis became disabling on February 20, 2013. (AR 14.) After state agency denials, Plaintiff and Elia appeared and testified at a hearing before an Administrative Law Judge (ALJ). (AR 32, 73, 83.) At the ALJ's request, pediatrician Daniel Weisman appeared and testified as a medical expert. (AR 32.) On January 13, 2014, the ALJ issued a decision finding that Plaintiff is not disabled within the meaning of the Social Security Act. (AR 27.) The ALJ's decision became the agency's final decision when the Appeals Council denied Plaintiff's request for review, (AR 1), and this appeal followed. For the following reasons, the agency's decision is affirmed.

**I. Standard of Review**

The district court reviews only those issues raised by the party challenging the

agency's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The agency's decision must be upheld unless it is not supported by substantial evidence or is tainted by harmful legal error. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The court, however, reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

**II. Procedure for Evaluating Childhood SSI Cases**

A minor is considered disabled under the Social Security Act if she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). When evaluating a minor claimant's disability application, the agency follows a three-step process. 20 C.F.R. § 416.924. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." *Id.* § 416.924(a). If so, the inquiry ends and the claimant is not disabled. *Id.* § 416.924(b). If, however, the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two and determines whether the claimant has a severe medically determinable impairment or combination of impairments. *Id.* § 416.924(a). If the claimant is not severely impaired, she is not disabled. *Id.* § 416.924(c). If the claimant has a severe impairment or combination of impairments, the ALJ proceeds to the final step and determines whether the claimant's impairment(s) meets, medically equals, or functionally equals an impairment listed in Appendix 1 (Part B) to Subpart P of 20 C.F.R. Pt. 404. *Id.* § 416.924(a), (d). In determining whether the claimant's condition functional equals a

listed impairment, the ALJ assesses the claimant's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.* § 416.926a(b). A claimant's condition functionally equals a listed impairment if it results in marked limitations in at least two domains or an extreme limitation in one. *Id* § 416.926a(d). If a claimant's condition does not meet, medically equal, or functionally equal a listed impairment, she is not disabled.

**III. Discussion**

At steps one and two, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since her alleged disability onset date and that her rheumatoid arthritis is a severe impairment. (AR 17.) At step three, however, the ALJ determined that Plaintiff's condition neither meets, medically equals, nor functionally equals a listed impairment. (AR 17.) In so doing, the ALJ found that Plaintiff was not markedly limited in any of the six domains of functioning. (AR 21-27.) The ALJ therefore concluded that that she was not disabled. (AR 27.)

Plaintiff does not challenge the ALJ's conclusion that her rheumatoid arthritis does not meet or medically equal a listed impairment, nor does she challenge the ALJ's assessment of her functioning in domains one, two, three, and five. She challenges only the ALJ's findings that she has less than marked functional limitations in domains four (moving about and manipulating objects) and six (health and physical well-being).

Domain four considers a minor claimant's ability to use motor skills freely and to travel around school and the community. 20 C.F.R. § 416.926a(j)(2)(v). Minors "should be able to participate in a full range of individual and group physical activities," "show mature skills in activities requiring eye-hand coordination," and "have the fine motor skills needed to write efficiently or type on a keyboard." *Id.* Domain six considers "the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on [a claimant's] functioning[.]" § 416.926a(l).

> Unlike the other five domains of functional equivalence (which address a child's abilities), this domain does not address typical development and functioning. Rather, the . . . domain addresses how such things as recurrent illness, the side effects of medication, and the need for ongoing treatment affect a child's body; that is, the child's health and sense of physical well-being.

Social Security Ruling (SSR) 09-8p, 2009 WL 396030, at *2.  A claimant's impairment(s) result in marked limitations if it "interferes seriously" with the claimant's "ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(2)(i).

Here, the ALJ found that Plaintiff has less than marked limitations in moving about and manipulating objects:

> This finding is supported by the claimant's testimony during the hearing. For instance, the claimant indicated she was able to ride a bicycle, swim, dress herself, bathe, tie her shoes, and prepare simple meals, like cereal or toast. As well, the claimant indicated she can do dishes. She has played three soccer games with the most recent one occurring approximately one month prior to the hearing. Findings upon physical examinations show of minimal abnormal findings (Exhibits 1F & 6F). Moreover, the claimant frequently denied any symptoms to treating physicians. This conclusion is further supported by the opinion of the claimant's teacher (Exhibit 5E).

(AR 25.)  Likewise, the ALJ found that Plaintiff has less than marked limitations in health and physical well-being:

> The claimant is currently treated with medication and occasional injections for juvenile arthritis (Exhibits 1F & 6F). She is seen approximately every 2-3 months for medication management and follow up. The claimant rarely offers complaints and clinical findings are somewhat minimal. Thus, treatment has been fairly conservative in nature. The claimant is doing well in school and she testified to maintaining general normal activities of daily living (Exhibits 5E and Claimant's Testimony). Finally the conclusion reached herein is consistent with that of the reviewing physicians for the State agency (Exhibits 2A & 4A).

(AR 26-27.)  In making these findings, Plaintiff contends that the ALJ erred by: (1) rejecting the opinion of Dr. Wiseman; (2) giving greater weight to the opinions of the

state agency reviewers than to the opinion of Dr. Wiseman; (3) giving greater weight to the lay opinion of Plaintiff's teacher than to the medical opinions in the record; and (4) discounting Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms. (Docs. 24, 29.)  The Court addresses each issue in turn.

**A.  Dr. Wiseman's Testimony**

Section 1382c(a)(3)(I) of the Social Security Act states:

> In making any determination under this title . . . with respect to the disability of an individual who has not attained the age of 18 years . . . , the Commissioner of Social Security shall make reasonable efforts to ensure that a qualified pediatrician or other individual who specializes in the field of medicine appropriate to the disability of the individual . . . . evaluates the case of such individual.

The Ninth Circuit has interpreted this provision "to mean that the ALJ is required to make a reasonable effort to obtain a case evaluation, based on the record in its entirety, from a pediatrician or other appropriate specialist, rather than simply constructing his own case evaluation from the evidence in the record." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1014 (9th Cir. 2003).  A failure to comply with this statutory mandate constitutes reversible legal error.  *Id.*

Here, the ALJ complied with § 1382c(a)(3)(I) by obtaining a case evaluation from Dr. Wiseman, who testified, in relevant part, as follows:

> The record shows that [Plaintiff] has an arthritis diagnosed when she was a small child, at age four.  And she had been having problems with that all of that time. . . .
>
> She began to have difficulties.  They took her to the doctors.  She went then to the Phoenix Children's Hospital last July, where the diagnosis was reestablished and confirmed.  The severity of it was reestablished, I think.  Dr. [Shishov] . . . , I believe, has been her rheumatologist all this time. . . .
>
> And he has many notes in the chart that are very helpful to see how she's been.  I don't have any doubt that she has juvenile rheumatoid arthritis, juvenile idiopathic arthritis, as we call it now.  It's moderately severe.  It involves her hip.  It involves her hands.  And at times, almost any other joints in the body that you wish to name.  But the ongoing biggest difficulty in the time frame in question is – is the hip?  It means that she can pretty much do everything.  She's able to academically keep up in school.  But she leads what in adult

>*life we would call a limited or even sedentary existence. So that's a significant limitation, especially for a child. So the question is how does this match up to the listing, I guess. And I can look at some of these listings that I think are relative to her situation.* The one that's most important, I believe, would be 101.02, major dysfunction of a joint or joints due to any cause. We know the cause. We know the response to therapy. I don't think it's fair to talk about the Enbrel quite yet because she just started this month. And its effect may take a little longer. But you don't go onto Enbrel unless you have major arthritis. And she does. She's also been on steroids for a long time. I think she's either tapered or off of them now. And she's been on Methotrexate. And the doses of all of those medicines had to be adjusted. And Dr. [Shishov] is still working to try to get the best balance that he can to get her the best benefits that he can get for her. *Even so, I think her limit in Domain Number 4, ability to move around and all is markedly impaired. I believe her general health, which would be Domain 6, is markedly impaired because of her physical limits. The other domains are in pretty good shape. And the letter of the law – or the letters of the listings would not be me, ordinarily. But this is not a small disease for our claimant today, I think that's a marked limitation. It's not unmanageable. It's not completely intolerable. But it's a very significant and worthy of your consideration.*

(AR 60-62 (emphasis added).)  When asked whether he thought Plaintiff's condition would meet or equal a listed impairment, Dr. Wiseman responded:

>I'd say it would equal it. *But, I think, equal is functionally.* And that why I went to the domain. . . .
>
>And literally Domain 4 and Domain 6 are considering the same problem. And that is limited range of motion; limited by pain; swelling; and actually anatomic abnormalities that have occurred. She's had this listing for 10 years now. And it's had an impact on her all her life.

(A.R. 63 (emphasis added).)  Had the ALJ credited Dr. Wiseman's testimony and adopted his findings on domains four and six, he would have been compelled to find Plaintiff disabled. The ALJ, however, gave Dr. Wiseman's opinion "little weight." (AR 20.) Plaintiff contends that the ALJ did not adhere to the proper legal standards for evaluating medical opinion evidence, and that his rationale for rejecting Dr. Wiseman's opinion does not withstand scrutiny. The Court disagrees.

As a general matter, when weighing medical source opinions the Ninth Circuit

distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The opinion of a treating physician typically is entitled to more weight than the opinions of non-treating physicians because treating physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Likewise, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Id.* As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31. The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id.* at 831. The opinions of non-examining physicians may, however, "serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957.

Plaintiff does not explain where § 1382c(a)(3)(I) experts like Dr. Wiseman fit within this framework. Strictly speaking, these experts are non-examining sources; they neither treat nor examine claimants. And though the Ninth Circuit has interpreted § 1382c(a)(3)(I) to require the ALJ to make reasonable efforts to obtain a case evaluation from a pediatrician or other appropriate specialist, the court has not held that such experts are treated differently than other non-examining medical sources. Accordingly, this Court will apply the legal standards governing non-examining medical sources to review

the ALJ's treatment of Dr. Wiseman's opinion.

Non-examining expert opinions constitute substantial evidence only if independent evidence in the record supports the opinions. *Thomas*, 278 F.3d at 957; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). "The [ALJ] may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). Additionally, factors that an ALJ may consider when evaluating *any* medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631.

The ALJ rejected Dr. Wiseman's opinion in part because he found it "was somewhat vague in that he [did not] list the specific findings that supported his assessment." (AR 20.) This rationale is inadequate. Although the ALJ may consider "the quality of the explanation provided" when weighing medical source opinions, the ALJ also has a duty to fully and fairly develop the record. *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). Here, Dr. Wiseman did not submit a written opinion; he testified in person. If the basis for Dr. Wiseman's opinion was vague, the ALJ could and should have asked him to clarify the specific findings that supported his assessment. Having failed to ask follow-up questions to fully and fairly develop the record, the ALJ cannot later complain about the perceived vagueness of Dr. Wiseman's opinion.

This, however, was not the sole reason the ALJ rejected Dr. Wiseman's opinion. The ALJ also found that Dr. Wiseman's opinion "was not well reasoned [or] supported by the objective and clinical findings." (AR 20.) Specifically, the ALJ found that Dr. Wiseman's "opinion is not supported by the fairly unremarkable physical examinations and the claimant's complaints offered to treating physicians." (AR 20.) Earlier in the decision, the ALJ elaborated on these treatment records:

> Typically, the claimant did not offer any complaints of joint pain, morning stiffness, or joint swelling. Yet, at worst, the claimant complained of pain in both elbows and hips during the day with stiffness in the morning lasting about 10 minutes

> (Exhibit 6F). Labs showed of negative ANA, rheumatoid factor, and CCP antibody (Exhibit 1F). In August 2012, x-rays of the claimant's hands, wrists, pelvis, feet, and ankles showed significant joint space narrowing and cystic erosions compatible with her diagnosis of juvenile idiopathic arthritis. . . . In April 2013, MRI of the hips illustrated mild improvement in synovitis but with persistent presence of synovitis and subchondral cyst formation, consistent with degenerative changes (Exhibit 6F). Examinations found tightness of both hips to internal and external rotation without any obvious tenderness and occasional swelling, tenderness, and decreased range of motion of the bilateral elbows (Exhibits 1F & 6F). As well, the claimant was observed walking and running comfortably. The remainder of the examinations were within normal limits. To treating physicians, the claimant reported improved symptoms with medication and injections (Exhibit 1F).

(AR 19.)

Inconsistency with the medical record is an appropriate reason to discount a medical opinion, and substantial evidence supports the ALJ's rationale. Although records from Plaintiff's treating rheumatologist, Dr. Michael Shishov, regularly noted that Plaintiff has significant tightness and loss of motion in her hips and experienced 10-15 minutes of stiffness in the morning, Plaintiff overall did not complain joint pain or swelling, had otherwise normal examinations, and walked and jogged comfortably. (AR 234-36, 243-44, 252-53.) Treatment notes from October 1, 2012 indicate that Plaintiff responded significantly to hip injections and was no longer experiencing morning stiffness in her hips. (AR 243-44.) On December 20, 2012, Dr. Shishov noted that Plaintiff had abrasions on her skin from a bike accident, suggesting that Plaintiff's condition did not prevent her from riding a bike. (AR 234-35.) Although in March and May of 2013 Plaintiff complained of increased pain due to the colder weather and reported that her morning stiffness had returned, she also walked and jogged down the hall comfortably and without antalgic gait. (AR 295-96, 303-04.) The ALJ reasonably found that these medical records did not support Dr. Wiseman's opinion and the Court therefore finds no reversible error.

### B. State Agency Reviewers

Prior to the hearing, Plaintiff's SSI application was evaluated by two state agency

reviewers. The first evaluation was completed by Dr. Robert Quinones on March 19, 2013. (AR 74.) Although Dr. Quinones opined that Plaintiff's arthritis markedly limited her ability to move about and manipulate objects, he concluded that she was not disabled because she had either no or less than marked limitations in the remaining five domains of functioning. (AR 67-74.) On June 24, 2013, Dr. Nathan Strause reconsidered Plaintiff's application and reached the same conclusion as Dr. Quinones.[1] (AR 77-85.)

The ALJ assigned partial weight to the state agency reviewers' opinions. (AR 20.) Specifically and in relevant part, the ALJ appears to have credited the state agency reviewers' assessments that Plaintiff had less than marked limitations in domain six, but rejected their assessments that Plaintiff has marked limitations in domain four. (AR 20.) The ALJ noted that the state agency reviewers based their assessments on a more limited record and did not have the opportunity to question Plaintiff, and found that "additional medical evidence, submitted at the hearing level," supports the conclusion herein of less than marked limitation with moving about and manipulating objects, rather than marked limitation in this regard as asserted by the State agency physicians." (AR 20.)

Plaintiff contends that it was legal error for the ALJ to assign partial weight to the opinions of the state agency reviewers because "opinions of nonexamining state agency physicians themselves may not serve as substantial evidence to support a denial of disability benefits." (Doc. 24 at 15.) The Court disagrees.

> [T]he opinions of State agency medical and psychological consultants and other program physicians and psychologists *can be given weight only insofar as they are supported by evidence in the case record,* considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist.

---

[1] Curiously, Dr. Strause noted in his report that Dr. Shishov "was unaware and very surprised that there was an application for disability. He stated that he absolutely would not consider the child as disabled." (AR 82.)

- 10 -

SSR 96-6p, 1996 WL 374180, at *2.  Here, the ALJ complied with this standard by giving no weight to the state agency reviewers' assessments on domain four, which the ALJ found were inconsistent with the evidence in the case record (including evidence received at the hearing level), and partial weight to the assessments on domain six, which the ALJ found were supported by the treatment records.  (AR 19-20.)

For the same reasons that the ALJ reasonably rejected Dr. Wiseman's opinion on domain four, the ALJ did not err in concluding that the state agency reviewers' assessments of Plaintiff's ability to move about and manipulate objects were inconsistent with the medical record as a whole.  Further, substantial evidence supports the ALJ's partial crediting of the state agency reviewers' assessments on domain six.  In addition to the medical records already discussed, the ALJ discussed treatment notes from Whispering Palms Medical Center which report that Plaintiff generally feels, eats, and sleeps well.  (AR 310-13, 315, 325-29, 331.)  The Court finds no reversible error in the ALJ's treatment of the state agency reviewers' assessments.

### C.  Teacher Questionnaire

Next, Plaintiff contends that the ALJ erred by giving greater weight to a questionnaire completed by her seventh grade language arts teacher, who observed no significant limitations in Plaintiff's functioning for any of the relevant domains of functioning, than to the medical opinions in the record.  (AR 20, 188-95; Doc. 24 at 16.) Teachers are considered "other sources" and their opinions may be considered as evidence "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function[.]"  SSR 06-03p, 2006 WL 2329939, at *2.

> An opinion from a "non-medical source" who has seen the claimant in his or her professional capacity may, under certain circumstances, properly be determined to outweigh the opinion from a medical source, including a treating source.  For example, this could occur if the "non-medical source" has seen the individual more often and has greater knowledge of the individual's functioning over time and if the "non-medical source's" opinion has better supporting evidence and is more consistent with the evidence as a whole.

*Id.* at *6. The ALJ complied with these standards.  Specifically, the ALJ gave greater

- 11 -

1    weight to the teacher's opinion because "the teacher is an unbiased party and saw the
2    claimant on a daily basis, making this individual qualified to make such assessments
3    about the claimant's difficulties in certain areas." (AR 20.)  Additionally, the ALJ found
4    that the teacher's opinion was "consistent with the greater objective medical evidence of
5    record." (AR 20.)  For reasons already explained, the ALJ's finding that the greater
6    objective medical evidence supported less than marked limitations is supported by
7    substantial evidence.  The Court therefore finds no reversible error in the ALJ's treatment
8    of non-medical source evidence.

### D. Plaintiff's Subjective Symptom Testimony

When evaluating the credibility of a claimant's symptom testimony, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  "A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (internal quotation and citation omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

Here, the ALJ found that Plaintiff's rheumatoid arthritis could reasonably be expected to produce her alleged symptoms, but concluded that Plaintiff's "statements concerning the intensity, persistence and limited effects of these symptoms are not entirely credible[.]" (AR 18).  The ALJ then proceeded to summarize the evidence in the record without "identify[ing] specifically which of [Plaintiff's] statements [he] found not credible and why." *Brown-Hunter*, 806 F.3d at 493.  The Court agrees with Plaintiff that

the ALJ's discussion lacks the specificity required by the Ninth Circuit and agency regulations.

Nonetheless, the Court finds that the error is harmless. Although the ALJ purported to have found Plaintiff's symptom testimony not entirely credible, he appears to have credited Plaintiff's testimony in his discussion of domains four and six. Specifically, while acknowledging that Plaintiff experiences some elbow and hip pain and roughly ten minutes of stiffness in the morning, the ALJ noted that Plaintiff:

> indicated she was able to ride a bicycle, swim, dress herself, bathe, tie her shoes, and prepare simple meals, like cereal or toast. As well, the claimant indicated she can do dishes. She has played three soccer games with the most recent one occurring approximately one month prior to the hearing.

(AR 19, 25.) Further. "she testified to maintaining generally normal activities of daily living[.]" (AR 26-27.) This appears to be a fair and accurate summary of Plaintiff's hearing testimony. (*See* AR 47-55.)

Accordingly, although the Court acknowledges—and is somewhat puzzled by the fact—that the ALJ purported to find Plaintiff's testimony not fully credible, Plaintiff has not shown that this finding was harmful in light of the ALJ's subsequent reliance upon Plaintiff's testimony. Notably, the ALJ did not find that Plaintiff had *no* functional limitations. Rather, the ALJ found that Plaintiff's rheumatoid arthritis, although occasionally painful or uncomfortable, did not result in marked or extreme limitations, particularly in light of the activities that Plaintiff indicated she could do. The Court finds no reversible error.

**IV. Conclusion**

For the foregoing reasons, the Court finds that the ALJ's decision is free of harmful legal error and is supported by substantial evidence.

//
//
//
//

- 13 -

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **AFFIRMED**. The Clerk shall enter judgment accordingly and terminate this case.

Dated this 24th day of March, 2017.

Douglas L. Rayes
United States District Judge